IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

FILED
U.S. DISTRICT COURT
2008 SEP 10 PM 3:43

| | |
|---|---|
| TERRY LAMAR BAKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 308-034 |
| ) | |
| FNU AYERS, Doctor at Calhoun State ) | |
| Prison; GAIL POWELL, Medical ) | |
| Administrator at Johnson State Prison; ) | |
| MARY ALSTON, Doctor at Johnson State ) | |
| Prison; FNU FOSSIER, Orthopedic Doctor ) | |
| at Oconee Regional Hospital; TOM ) | |
| SITTNICK, Director of Investigation and ) | |
| Compliance of the Georgia Department of ) | |
| Corrections; and FNU LEWIS, Doctor at ) | |
| Augusta State Medical Prison, ) | |
| ) | |
| Defendants. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate at Johnson State Prison ("JSP") in Wrightsville, Georgia, has submitted to the Court for filing a complaint brought pursuant to 42 U.S.C. § 1983. Because he is proceeding *in forma pauperis*, Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e) & 1915A.

Accordingly, on June 30, 2008, the Court reviewed Plaintiff's complaint in conformity with the *in forma pauperis* statute. Because of pleading deficiencies, Plaintiff was directed to file an amended complaint. (Doc. no. 8). Plaintiff has submitted an amended complaint (doc. no. 9), and it is this document that the Court will now review.

## I. BACKGROUND

*Liberally* construing Plaintiff's amended complaint, the Court finds the following. Plaintiff names the following Defendants: (1) FNU Ayers, doctor at Calhoun State Prison ("CSP"), (2) Gail Powell, Medical Administrator at JSP, (3) Mary Alston, doctor at JSP, (4) FNU Fossier, orthopedic doctor at Baldwin State Prison ("BSP") and Oconee Regional Hospital, (5) Tom Sittnick, Director of Investigation of the Georgia Department of Corrections, and (6) FNU Lewis, urologist at Augusta State Medical Prison ("ASMP"). (Doc. no. 9, pp. 1, 4, 11).

Plaintiff's amended complaint addresses three different medical problems and the treatment he received regarding these medical problems. The treatment of which Plaintiff complains occurred over a span of several years and at several different prisons. Two of his medical problems occurred simultaneously. For purposes of clarity, the Court will address the issues raised in Plaintiff's amended complaint by his medical problems, as opposed to chronologically.

Plaintiff alleges that in April, 2005, while incarcerated at CSP he lost use of his right arm and shoulder. (Id. at 11). Plaintiff alleges that he went to medical "numerous times, complaining and telling them [he] hurt and couldn't raise [his] arm." (Id.). According to Plaintiff, Defendant Ayers "did nothing." (Id.). Because Plaintiff was not receiving the

2

treatment he believed he required, he requested a transfer to an institution with a better medical facility. (Id.). In July, 2005, Plaintiff was transferred to JSP. (Id.). While at JSP, Plaintiff alleges that he complained to the medical staff about his shoulder problem. (Id.). In October, 2005, Defendant Alston sent Plaintiff to BSP to see Defendant Fossier, an orthopedic surgeon. (Id.). According to Plaintiff, Defendant Fossier sent Plaintiff to Vidalia, Georgia, to Meadows Memorial Hospital to get an MRI. (Id.). Plaintiff maintains that the MRI showed Plaintiff's "rotary cup had been eaten away by degenerative arthritis." (Id. at 12). On January 6, 2006, Defendant Fossier replaced Plaintiff's "rotator cuff" at the Oconee Regional Hospital. (Id.). After he recovered from his surgery he was sent back to JSP. (Id.).

Thirty days after his return to JSP, the cite of his incision was swollen and had re-opened. (Id.). Defendant Alston immediately sent Plaintiff to see Defendant Fossier, who immediately re-hospitalized Plaintiff at the Oconee Regional Hospital. (Id.). Defendant Fossier treated Plaintiff's infection and determined that Plaintiff had a bone staph infection.[1] (Id.). His treatment for the staph infection began while Plaintiff was at the hospital, and continued upon his transfer to ASMP. (Id.). Plaintiff remained at ASMP for three months. (Id.). He was then transferred back to JSP. (Id.).

Upon his return to JSP, Plaintiff asserts that "everything was going pretty well, then all of the sudden, [he] lost use of [his] arm again, and it was hurting pretty terribly." (Id.). Plaintiff was sent back to Defendant Fossier, who performed another surgery on Plaintiff's shoulder. (Id.). Because Plaintiff's shoulder was infected again, Defendant Fossier removed

---

[1]Plaintiff notes that he contracted the bone staph infection from his initial shoulder surgery. (Doc. no. 9, p. 12).

3

Plaintiff's "rotator cuff." (Id.). Thereafter, Plaintiff spent two months at the BSP infirmary treating the infection. (Id.). On July 15, 2007, Plaintiff was transferred back to JSP "without a rotator cuff [sic]." (Id.). Plaintiff alleges that once he went back to JSP he was not provided any pain medication. (Id.). However, he also alleges that he complained to medical personnel about the pain, and Defendant Alston only gave him ibuprofen. (Id.). Plaintiff maintains that he asked both Defendants Alston and Fossier when "they were going to put another rotator cuff [sic] in his shoulder?" (Id.). Both Defendants purportedly informed Plaintiff that he would not get another "rotator cuff [sic] or second opinion." (Id.). Plaintiff alleges that Defendant Alston did not give him any pain medication, other than ibuprofen, for his shoulder even though he was in severe pain. (Id. at 16).

Plaintiff asserts that he finally convinced Defendant Alston that he required pain medication, and she sent him to the pain clinic at ASMP. (Id.). While at ASMP, Plaintiff was prescribed pain medication and then he was sent back to JSP. (Id.). Defendant Alston discontinued Plaintiff's pain medication after three weeks because it appeared as though he was abusing the pain medication.[2] (Id.).

Plaintiff alleges that he exhausted his administrative remedies regarding his complaints about his shoulder and the medical treatment he received. He also contends he exhausted his administrative remedies regarding the refusal of Defendant Alston to give him pain medication. (Id.). Concerning Plaintiff's grievance regarding pain medication, he complains that Defendant Sittnick, in rejecting Plaintiff's grievance, was more concerned

---

[2] Plaintiff disagrees with the characterization that he was abusing the medication. (Doc. no. 9, p. 16).

4

about the form of the grievance than the content.³ (Id.).

Plaintiff's second medical problem commenced in mid-2004 while he was incarcerated at CSP. (Id. at 13). Plaintiff complained of swelling in his left testicle. After being examined by Defendant Ayers, Plaintiff was sent to ASMP for an ultrasound to determine what was causing the swelling. (Id.). Apparently, Defendant Ayers informed Plaintiff that it was nothing to worry about. (Id.). As previously noted, Plaintiff was then transferred to JSP. (Id.). While at JSP, Plaintiff saw Defendants Alston, and some nurses (who are not named as defendants in this case) regarding this problem. (Id.). He notes that "no one seemed alarmed." (Id.). However, according to Plaintiff, his condition worsened as the swelling continued to increase. (Id.). Plaintiff maintains that all the while he was dealing with his shoulder problem, he was also complaining about the pain and swelling of his testicle. (Id.). On March 27, 2007, Defendant Alston sent Plaintiff to ASMP to see Defendant Lewis, a urologist. (Id.). Plaintiff alleges that Defendant Lewis informed Plaintiff that either before or after his shoulder surgery, Defendant Lewis would perform a "hydroceal" on Plaintiff. (Id.). However, according to Plaintiff, Defendant Lewis did nothing. (Id. at 14).

On October 1, 2007, Defendant Alston sent Plaintiff back to BSP for another ultrasound of his testicle. (Id.). Because the swelling continued to increase, Defendant Alston also sent Plaintiff to Reidsville State Prison, ("RSP") where he was seen by Dr. Gonzales. (Id.). On November 27, 2007, Dr. Gonzales operated on Plaintiff with the

---

³It appears that Defendant Sittnick denied Plaintiff's grievance concerning the lack of pain medication because Plaintiff had submitted too many pages with the appeal. (Doc. no. 9, p. 3).

5

intention to perform a "hydroceal," but he instead had to remove Plaintiff's left testicle. (Id.). Plaintiff admits that he did not exhaust his administrative remedies regarding his second medical problem. (Id. at 4). He notes that he "appeal[ed] all [grievances] except, [the grievance concerning the] loss of [his] left testicle; Gail Powell said that his grievance was out of date." (Id.).

Plaintiff's third medical problem concerns the purported misdiagnosis of an infection. (Id. at 14). In mid-October, 2007, Plaintiff saw Defendant Alston concerning some sores on his face and neck. She diagnosed him with infantigo. (Id.). According to Plaintiff, several weeks later, Defendant Alston changed her diagnosis from infantigo to MRSA, a staph infection. (Id.). Defendant Alston and PA Bell both saw Plaintiff between November, 2007 and January, 2008, and treated him with antibiotics. (Id.). However, the sores would not go away. (Id.). On May 30, 2008, Plaintiff was sent to ASMP where he was seen by a dermatologist who diagnosed him with infantigo. (Id. at 15). Plaintiff was hospitalized immediately and treated. (Id.). On June 9, 2008, Plaintiff was transferred back to JSP. (Id.). Plaintiff again was seen by the dermatologist for a follow up, and he was prescribed Vicodin for his pain. (Id.). Plaintiff alleges that Defendant Alston would not give him the medication for his pain. (Id.). However, he notes that Defendant Alston ordered Plaintiff some Darvocet, but, he never received it. (Id.).

Plaintiff states that he began the grievance process on this third medical problem on May 28, 2008. (Id.). Defendant Powell signed Plaintiff's informal grievance, stating that "Inmate Baker is getting proper care and medical treatment." (Id.). Obviously, Plaintiff disagrees with Defendant Powell's statement. (Id.).

6

## II. DISCUSSION

A.  **Un-Exhausted Claims**

Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's mandatory exhaustion requirement applies to all federal claims brought by any inmate. Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005), *cert. denied*, 548 U.S. 925 (2006). Put plainly, "a Georgia prisoner 'must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures.'" Salas v. Tillman, 162 Fed. Appx. 918, 920 (11th Cir. Jan. 17, 2006) (quoting Johnson, 418 F.3d at 1155).

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, an inmate must complete the administrative process *before* initiating

7

suit. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (*per curiam*); see also Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999).

Here, Plaintiff admits that he has failed to complete the exhaustion process concerning his second medical problem prior to filing suit. He notes that he "appeal[ed] all [grievances] except, [the grievance concerning the] loss of [his] left testicle; Gail Powell said that his grievance was out of date." (Id.). Thus, in light of Plaintiff's admission that he failed to properly exhaust administrative remedies regarding his second medical issue, he failed to properly exhaust administrative remedies; this claim should be dismissed without prejudice.[4] Accordingly, as Plaintiff has named Defendant Lewis in connection to his second medical problem, Plaintiff has failed to state a claim upon which relief can be granted against this Defendant; thus Defendant Lewis should be dismissed.

Concerning Plaintiff's third medical problem, he asserts that he began the grievance procedure regarding this problem on May 28, 2008, two months after he initiated the above-captioned case. The administrative grievance process is governed by SOP IIB05-0001. See

---

[4]The Court recognizes that the Supreme Court recently held that under the Prison Litigation Reform Act, exhaustion of administrative remedies is an affirmative defense. Jones v. Bock, 127 S. Ct. 910, 921 (2007). However, if the allegations in the complaint, taken as true, demonstrate that a prisoner's claims are barred by an affirmative defense, the complaint is subject to dismissal for failure to state a claim upon which relief can be granted. Id. at 14; see also Clark v. Georgia Bd. of Pardons and Paroles, 915 F.2d 636, 640-41 (11th Cir. 1990) (explaining that district court may dismiss prisoner's complaint "if [it] sees that an affirmative defense would defeat the action," including the prisoner's failure to exhaust "alternative remedies"). Therefore, because it is clear from the face of Plaintiff's complaint that he failed to exhaust his administrative remedies, the Court can properly recommend that Plaintiff's complaint be dismissed. See Anderson v. Donald, Civil Case No. 06-16322 (11th Cir. Jan. 8, 2008) (finding that the district court properly dismissed the plaintiff's complaint because the allegations in the complaint sufficed to establish that Plaintiff failed to exhaust his administrative remedies).

SOP IIB05-0001 § VI(B), once an inmate has unsuccessfully attempted to resolve a complaint through discussion with the staff involved, the administrative remedies procedure commences with the filing of an informal grievance. The inmate has ten (10) calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the informal grievance. SOP IIB05-0001 § VI(B)(5). The timeliness requirements of the administrative process may be waived upon a showing of good cause. See id § VI(C)(2) & (D). The SOP requires that an inmate be given a response to his informal grievance within ten (10) calendar days of its receipt by the inmate's counselor; the informal grievance procedure must be completed before the inmate will be issued a formal grievance. Id § VI(B)(12)-(13).

If unsatisfied with the resolution of his informal grievance, an inmate must complete a formal grievance form and return it to his counselor within five (5) business days of his receipt of the written resolution of his informal grievance. Id. § VI(C)(2). Once the formal grievance is given to the counselor, the Warden/Superintendent has thirty (30) calendar days to respond. Id. § VI(C)(14). If the inmate is not satisfied with the Warden's response to the formal grievance, he has five (5) business days from the receipt of the response to file an appeal to the Office of the Commissioner; the Office of the Commissioner or his designee then has ninety (90) calendar days after receipt of the grievance appeal to respond. Id. § VI(D)(2),(5). The grievance procedure is terminated upon the issuance of a response from the Commissioner's Office. Id.

First, it should be pointed out that the PLRA does not allow Plaintiff to exhaust administrative remedies while his case is pending. See McKinney v. Carey, 311 F.3d 1198,

1200 (9th Cir. 2002); Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002); Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001); Jackson v. Dist. of Columbia, 254 F.3d 262, 269 (D.C. Cir. 2001); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999); Perez v. Wisconsin Dep't of Corr., 182 F.3d 532, 538 (7th Cir. 1999). Under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156. As exhaustion of administrative remedies is a "precondition" to filing an action in federal court, Plaintiff had to complete the administrative process *before* initiating this suit; thus, his claims regarding his third medical problem should also be dismissed without prejudice.

**B.     Procedures and Grievance Claims**

To the extent Plaintiff alleges that his constitutional rights were violated by Defendants Powell and Sittnick because his grievances and appeals were mishandled as to their investigation or otherwise processed in a manner that did not comply with the department of corrections grievance procedures, his claim must fail. "Procedural requirements alone do not create a substantive liberty interest, and mere violation of such procedures is not a constitutional violation." Rienholtz v. Campbell, 64 F. Supp.2d 721, 731 (W.D. Tenn. 1999), *aff'd*, 198 F.3d 247 (6th Cir. 1999) (Table); see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner. . . . A state-created prison grievance procedure is simply

10

a procedural right and does not confer any substantive right upon an inmate."); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state.").

The Eleventh Circuit's decision in Wildberger v. Bracknell, 869 F.2d 1467 (11th Cir. 1989) (*per curiam*) is instructive on this point. In that case, the plaintiff alleged numerous claims, including a violation of "the grievance procedures established by the State Department of Corrections." Id. at 1467. Addressing the plaintiff's claims, the magistrate judge determined that the "violation of the grievance procedure did not rise to the level of a constitutional violation, since there was no entitlement to a grievance procedure under the Federal Constitution." Id. In the end, the magistrate judge determined that none of the plaintiff's claims had merit. Id. at 1468. Although the Eleventh Circuit found error with the trial court's analysis of one of the plaintiff's retaliation claims, it found no error with the trial court's adoption of the magistrate judge's recommendation regarding the plaintiff's grievance claim. Id.

In this case, Plaintiff's only complaint asserted against Defendant Powell concerns the handling of Plaintiff's grievance regarding his second medical problem. Plaintiff notes that he "appeal[ed] all [grievances] except, [the grievance concerning the] loss of [his] left testicle; Gail Powell said that his grievance was out of date." (Id.). Regarding Defendant Sittnick, Plaintiff complains that Defendant Sittnick, in rejecting Plaintiff's grievance, was more concerned about the form of the grievance as opposed to the content.[5] However,

---

[5]As previously noted, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines

11

alleged misdeeds regarding grievance procedures do not give rise to stand-alone claims under § 1983. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (*per curiam*). "There is no right to a particular type of process in the handling of prison grievances. . . . [F]ederal courts simply do not sit as the ultimate appellate tribunal for prison grievance procedures." Rienholtz, 64 F. Supp.2d at 731. Therefore, Plaintiff's claims against Defendants Powell and Sittnick, regarding an alleged violation of the grievance procedures, fail as a matter of law.

## C. Claims Barred by the Statute of Limitations

Plaintiff filed the instant complaint in March of 2008; the claims he asserted against Defendant Ayers occurred between April of 2005, when Plaintiff purportedly lost use of his shoulder and began having issues with his testicle, and July of 2005, when he was transferred to JSP. Plaintiff's claims against Defendant Ayers are clearly subject to dismissal under the applicable two-year statute of limitations in Georgia. See Lawson v. Glover, 957 F.2d 801, 803 (11th Cir. 1987); Williams v. City of Atlanta, 794 F.2d 624, 626 (11th Cir. 1986).

Although state law determines the applicable statute of limitations period for claims under § 1983, federal law determines the date of accrual. See Rozar v. Mullis, 85 F.3d 556, 561 (11th Cir. 1996); Lavellee v. Listi, 611 F.2d 1129, 1130 (5th Cir. 1980). Under § 1983, a claim accrues when the plaintiff knows or has reason to know that he was injured, and he must be aware or should be aware who injured him. Rozar, 85 F.3d at 562. The latest Plaintiff was subjected to treatment, or the lack thereof, by Defendant Ayers was July of 2005, but Plaintiff did not file the instant lawsuit until March of 2008, almost three years

---

and other critical procedural rules" along the way. Id. (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005), *cert. denied*, 548 U.S. 925 (2006).

after the events in question occurred.

As Plaintiff's claims against Defendant Ayers are time-barred, Plaintiff has failed to state a claim upon which relief may be granted against Defendant Ayers, and he should be dismissed.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's claims concerning his second and third medical claims, his testicle and his infantigo, be **DISMISSED** without prejudice for failure to exhaust administrative remedies and that Defendants Powell, Sittnick, Ayers, and Lewis be **DISMISSED**.[6]

SO REPORTED and RECOMMENDED this /24th day of September, 2008, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[6] In a simultaneously filed Order, the Court has directed service of process on Defendants Alston and Fossier for Plaintiff's deliberate indifference claims concerning his second medical problem regarding his shoulder and pain medication for his shoulder.

13