# ORIGINAL

FILED
U.S. DISTRICT COURT
2009 JAN 26 P 2: 50

CLERK

| | |
|---|---|
| TERRY LAMAR BAKER, | ) |
|     Plaintiff, | ) |
| v. | )    CV 308-034 |
| MARY ALSTON, Doctor at Johnson State Prison, et al., | ) |
|     Defendants. | ) |

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Plaintiff, an inmate currently at the Columbia Care Center in Columbia, South Carolina,

commenced the above-captioned case pursuant to 42 U.S.C. § 1983. Plaintiff is proceeding

*pro se* and *in forma pauperis* ("IFP"). The matter is presently before the Court on

Defendants' pre-answer "Motion to Dismiss." (Doc. no. 33). Plaintiff has responded to the

motion (doc. no. 37),[1] as well as filed a "Motion for Court to Give or Partition a[n] Expert

Witness for Trial" (doc. no. 56). For the reasons set forth below, the Court **REPORTS** and

**RECOMMENDS** that Defendants' motion to dismiss be **GRANTED**, that Plaintiff's

"Motion for Court to Give or Partition a[n] Expert Witness for Trial" be deemed **MOOT**,

and that this civil action be **CLOSED**.

---

[1]Plaintiff attached informal and formal grievances he filed pertaining to the above-captioned case to doc. no. 38. Accordingly, in addressing Defendants' motion to dismiss, the Court has also considered this information.

## I.    BACKGROUND

Plaintiff's amended complaint alleges that Defendants Fossier and Alston violated his Eighth Amendment rights when they were deliberately indifferent to his serious medical needs.[2] (See generally doc. no. 9). The facts pertinent to Plaintiff's remaining claims are as follows. Plaintiff alleges that in April, 2005, while incarcerated at Calhoun State Prison ("CSP") he lost use of his right arm and shoulder. (Id. at 11). In July, 2005, Plaintiff was transferred to Johnson State Prison ("JSP"). (Id.). While at JSP, Plaintiff alleges that he complained to the medical staff about his shoulder problem. (Id.). In October, 2005, Defendant Alston sent Plaintiff to Baldwin State Prison ("BSP") to see Defendant Fossier, an orthopedic surgeon. (Id.). According to Plaintiff, Defendant Fossier sent Plaintiff to Vidalia, Georgia, to Meadows Memorial Hospital to get an MRI. (Id.). Plaintiff maintains that the MRI showed Plaintiff's rotator cuff had been "eaten away" by degenerative arthritis. (Id. at 12). On January 6, 2006, Defendant Fossier replaced Plaintiff's rotator cuff at the Oconee Regional Hospital. (Id.). After he recovered from his surgery, he was sent back to JSP. (Id.).

Thirty days after his return to JSP, the site of his incision was swollen and had re-opened. (Id.). Defendant Alston immediately sent Plaintiff to see Defendant Fossier, who immediately re-hospitalized Plaintiff at the Oconee Regional Hospital. (Id.). Defendant Fossier treated Plaintiff's infection and determined that Plaintiff had a bone staph infection. (Id.). His treatment for the staph infection began while Plaintiff was at the hospital and

---

[2]Plaintiff's amended complaint alleges deliberate indifference to three medical problems: (1) inadequate treatment and pain concerning his shoulder; (2) the removal of a testicle, and (3) a staph skin infection. (Doc. no. 9). Plaintiff's claims concerning the removal of a testicle and his staph skin infection were dismissed. (Doc. no. 26).

continued upon his transfer to Augusta State Medical Prison ("ASMP"). (Id.). Plaintiff remained at ASMP for three months. (Id.). He was then transferred back to JSP. (Id.).

Upon his return to JSP, Plaintiff asserts that "everything was going pretty well, then all of the sudden, [he] lost use of [his] arm again, and it was hurting pretty terribly." (Id.). Plaintiff was sent back to Defendant Fossier, who performed another surgery on Plaintiff's shoulder. (Id.). Because Plaintiff's shoulder was infected again, Defendant Fossier removed Plaintiff's rotator cuff. (Id.). Thereafter, Plaintiff spent two months at the BSP infirmary treating the infection. (Id.). On July 15, 2007, Plaintiff was transferred back to JSP without a rotator cuff. (Id.). Plaintiff alleges that once he went back to JSP, he was not provided any pain medication. (Id.). However, he also alleges that he complained to medical personnel about the pain, and Defendant Alston only gave him Ibuprofen. (Id.). Plaintiff sought to have another rotator cuff placed in his shoulder. (Id.). However, both Defendants purportedly informed Plaintiff that he would not get another rotator cuff or second opinion. (Id.). Plaintiff alleges that even though he was in severe pain, Defendant Alston did not give him any pain medication, other than Ibuprofen, for his shoulder. (Id. at 16).

Plaintiff asserts that he finally convinced Defendant Alston that he required pain medication, and she sent him to the pain clinic at ASMP. (Id.). While at ASMP, Plaintiff was prescribed pain medication, and then he was sent back to JSP. (Id.). Defendant Alston discontinued Plaintiff's pain medication after three weeks because she claimed it appeared as though he was abusing the pain medication.[3] (Id.).

The Court sanctioned Plaintiff's claims against Defendants Alston and Fossier for

_____

[3]Plaintiff disagrees with the characterization that he was abusing the medication. (Doc. no. 9, p. 16).

deliberate indifference to a serious medical need concerning the replacement of Plaintiff's rotator cuff, and against Defendant Alston for her management of Plaintiff's pain relating to his shoulder. Defendants now seek to dismiss Plaintiff's amended complaint for Plaintiff's failure to exhaust his administrative remedies, as well as for Plaintiff's failure to state a claim for deliberate indifference to his serious medical needs. (See generally doc. no. 33).

Defendants argue that with respect to the replacement of his rotator cuff, Plaintiff failed to properly exhaust his administrative remedies. (Id. at 8; Morris Aff. ¶¶ 16, 17). More specifically, Defendants argue that Plaintiff only filed an informal grievance for his complaints that he needed his rotator cuff replaced. (Id. , Morris Aff. ¶ 16, Ex. A-2). As to Plaintiff's complaint concerning Defendant Alston's pain management of his shoulder, Defendants maintain that Plaintiff has not stated a viable claim for deliberate indifference. Plaintiff concedes that, initially, he only filed an informal grievance. (Doc. no. 37, p. 1). However, Plaintiff argues that he was unable to file a formal grievance concerning the replacement of his rotator cuff because the counselor did not timely return his informal grievance. (Id.). Indeed, Plaintiff notes that the first case he filed in this Court, that addressed the same issues as the instant case, was dismissed for failure to exhaust his administrative remedies. Baker v. Washington, Civil Case No. 307-051, doc. no. 13 (S.D. Ga. Oct. 25, 2007) (hereinafter "CV 307-051"). However, Plaintiff argues that once CV 307-051 was dismissed for failure to exhaust his administrative remedies, he filed "grievances all the way like he was supposed to have done. . . ." (Doc. no. 37, p. 1). Plaintiff further argues that if Mr. Morris (counselor) were to review Plaintiff's records, he would see that Plaintiff did exhaust his administrative remedies. (Id.). However, Plaintiff notes that the staff at JSP "conveniently lost" all of his paper; therefore, he does not have the paperwork

to verify his allegation. (Id.).

## II. DISCUSSION

### A. Applicable Legal Standard for Exhaustion

Where a defendant has filed a motion to dismiss based on failure to exhaust

administrative remedies, as Defendants have here, the Eleventh Circuit has laid out a two-

step process for courts to use in resolving such motions.

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.
>
> . . . .
>
> If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues. . . . The defendants bear the burden of proving that the plaintiff has failed to exhaust his administrative remedies. . . . Once the court makes findings on the disputed issues of fact, it then decides whether under those findings, the prisoner has exhausted his available administrative remedies.

Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant v. Rich, 530 F.3d

1368, 1373-74 (11th Cir. 2008) (citations omitted), *cert. denied*, 129 S. Ct. 733 (U.S. Dec.

8, 2008)). Where exhaustion "is treated as a matter of abatement and not an adjudication on

the merits, it is proper for a judge to consider facts outside the pleadings and to resolve

factual disputes so long as the factual disputes do not decide the merits and the parties have

sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 (citations omitted).

### B. The Administrative Grievance Process

Within the Georgia Department of Corrections, the administrative grievance process

is governed by SOP IIB05-0001. Once an inmate has unsuccessfully attempted to resolve a complaint through discussion with the staff involved, the administrative remedies procedure commences with the filing of an informal grievance. SOP IIB05-0001 § VI(B). The inmate has ten (10) calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the informal grievance. Id. § VI(B)(5). The timeliness requirements of the administrative process may be waived upon a showing of good cause. See id. § VI(C)(2) & (D). The SOP requires that an inmate be given a response to his informal grievance within 10 calendar days of its receipt by the inmate's counselor; the informal grievance procedure must be completed before the inmate will be issued a formal grievance. Id. § VI(B)(12)-(13).

If unsatisfied with the resolution of his informal grievance, an inmate must complete a formal grievance form and return it to his counselor within five (5) business days of his receipt of the written resolution of his informal grievance. Id. § VI(C)(2). Once the formal grievance is given to the counselor, the Warden/Superintendent has thirty (30) calendar days to respond. Id. § VI(C)(14). If the inmate is not satisfied with the Warden's response to the formal grievance, he has 5 business days from the receipt of the response to file an appeal to the Office of the Commissioner; the Office of the Commissioner or his designee then has ninety (90) calendar days after receipt of the grievance appeal to respond. Id. § VI(D)(2),(5). The grievance procedure is terminated upon the issuance of a response from the Commissioner's Office. Id.

## C.     Failure to Exhaust Administrative Remedies

As noted above, the Court sanctioned Plaintiff's claim of medical deliberate indifference concerning the removal of his rotator cuff and the treatment he received to

manage the pain following the removal of his rotator cuff. Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Prison Litigation Reform Act's ("PLRA") mandatory exhaustion requirement applies to all federal claims brought by any inmate. Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 92 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90-91 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005), cert. denied, 548 U.S. 925 (2006). Put plainly, "a Georgia prisoner 'must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures.'" Salas v. Tillman, 162 Fed. App'x 918, 920 (11th Cir. Jan. 17, 2006) (quoting Johnson, 418 F.3d at 1155).

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, an inmate must complete the administrative process *before* initiating suit. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (*per curiam*); see also Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999). Under the PLRA, the Court has no

discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

Following the Burnside test set forth *supra*, the Court first looks to Defendants' factual allegations. See Burnside, 541 F.3d at 1082-83. Defendants contend that Plaintiff failed to exhaust administrative remedies concerning the replacement of his rotator cuff because Plaintiff did not file a formal grievance concerning this claim. (Doc. no. 33). In reply, Plaintiff concedes that he did not timely file a formal grievance, but he maintains that he was unable to timely file a formal grievance because the counselor delayed in returning his informal grievance. (Doc. no. 37). Additionally, Plaintiff claims that after CV 307-051 was dismissed for his failure to exhaust his administrative remedies, he completed the grievance procedure. (Id.).

Here, the record reflects that Plaintiff filed an informal grievance dated July 31, 2007. (Doc. no. 33, Ex. A-2). This informal grievance provides that Plaintiff had no rotator cuff in his left arm, that he needs his shoulder replaced, but that [Defendant Fossier] stated he would not replace his shoulder. (Id.). As the resolution to his complaint, Plaintiff requested that his shoulder be replaced. (Id.). This informal grievance also reflects that Plaintiff's complaint was resolved. (Id.). The record reflects that Plaintiff filed a second informal grievance dated October 12, 2007, that provides that Plaintiff had a shoulder joint put in his left shoulder, that his shoulder had required three surgeries, that the third surgery performed removed the replaced shoulder joint, that the doctor was not going to perform any other surgery on Plaintiff's shoulder, and that his arm was hanging limp and hurting. (Doc. no. 38,

p. 5). Finally, the record contains a formal grievance dated November 7, 2007, that provides, "As of [November 7, 2007], I have not seen [an] orthopedic specialist. I'm still in pain. I've not received [the] pain medicine ordered by [the] pain clinic [doctor] from Augusta State Medical Prison." (Id. at 6).

Here, the record establishes, and the parties agree, that Plaintiff submitted informal grievances addressing his complaint that he wanted his rotator cuff replaced. The record, however, does not reflect that Plaintiff filed any formal grievance concerning the replacement of his rotator cuff. To the extent Plaintiff attempts to allege that the formal grievance dated November 7, 2007, addressed his rotator cuff replacement complaint, his argument must fail. A reading of that formal grievance indicates that Plaintiff was complaining that he was in pain and needed the prescribed pain medication. (Id.). This formal grievance directly addresses Plaintiff's second claim in the above-captioned matter that Defendant Alston did not provide Plaintiff with pain medication.

As Plaintiff only submitted informal grievances concerning his complaint to replace his rotator cuff, Plaintiff did not complete the grievance procedure. Indeed, in order to properly exhaust his claims, Plaintiff must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Woodford, 548 U.S. at 90-91 (internal quotation omitted). As Plaintiff failed to complete the administrative process because he failed to comply with the procedural rules governing prisoner grievances, he procedurally defaulted his claims. Johnson, 418 F.3d at 1159.

Thus, the record reflects that the parties versions of the facts do not conflict; Plaintiff did not file a formal grievance. The Court is aware of Plaintiff's argument that he could not

timely file a formal grievance because the counselor delayed in returning a response to Plaintiff's informal grievance. To the extent Plaintiff argues that the counselor somehow inhibited his ability to complete the grievance procedure by delaying the response, thereby rendering a formal grievance untimely, his argument misses the mark. (Id.). Under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'"[4] Johnson, 418 F.3d at 1155, 1156. As the Court has noted *supra*, the plain language of § 1997e(a) forbids any inquiry except into whether administrative remedies are "available." In order to demonstrate that administrative remedies were unavailable, Plaintiff must point to specific facts showing that prison staff inhibited him from utilizing the grievance process. See Boyd v. Corr. Corp. of Am., 380 F.3d 989, 998 (6th Cir. 2004) ("nonspecific allegations of fear" and "subjective feeling[s] of futility" no excuse for failure to exhaust administrative remedies).

Here, even if the response to Plaintiff's informal grievance were untimely, SOP IIB05§ VI (c)(2) provides that an inmate:

> must fill out and sign his Formal Grievance Form and return it to his counselor within 5 business days of the inmate's receipt of the written resolution of his Informal Grievance. The Grievance Coordinator may waive this time limit for good cause.

Therefore, even if Plaintiff had received a delayed response to his informal grievance, he could have sought permission to file an out-of-time formal grievance for good cause. The

---

[4]Whether that possibility may be slight is irrelevant. The Eleventh Circuit has explained that, even if the likelihood of obtaining administrative relief is akin to that of being struck by lightning, an inmate must still exhaust administrative remedies. See Alexander, 159 F.3d at 1325 (quoting Irwin v. Hawk, 40 F.3d 347, 349 (11th Cir. 1994) ("No doubt denial *is* the likeliest outcome, but that is not sufficient reason for waiving the requirement of exhaustion. Light[]ning may strike; and even if it doesn't, in denying relief the [administrative authority] may give a statement of its reasons that is helpful to the district court in considering the merits.")).

Court is also aware that Plaintiff submitted a self-serving statement in which he claims to have exhausted his administrative remedies. (See doc. no. 37). Interestingly, this statement is unsworn, and Plaintiff does not provide any evidence that supports his claim.

In this regard, it is not improper for the Court to demand some evidence beyond Plaintiff's own self-serving statements showing that administrative remedies were not available. In Kozuh v. Nichols, No. 05-15207, 2006 WL 1716049, at *2 (11th Cir. June 22, 2006), the Eleventh Circuit rejected a prisoner's claim "that he was 'thwarted' when officials refused to respond to his grievances, leaving the grievance procedure unavailable." In rejecting Kozuh's argument for lack of evidence, the Eleventh Circuit noted the existence of contrary evidence that "Kozuh was able to file numerous informal complaints." Id. at *3. Here, Plaintiff never filed a formal grievance, and thus, he never completed the grievance procedure. Although Plaintiff maintains otherwise, there is ample evidence in the record from which to conclude that the grievance process was available to Plaintiff. Indeed, Plaintiff did exhaust his administrative remedies concerning the purported mismanagement of his pain. Rather, it was Plaintiff who failed to avail himself of the administrative process. As such, Plaintiff failed to exhaust his administrative procedure concerning his allegation against Defendants Fossier and Alston that they were deliberately indifferent to his serious medical needs because they would not replace his rotator cuff. Accordingly, Defendant Fossier and Plaintiff's claim concerning the replacement of his rotator cuff should be **DISMISSED**.

### D.     Dismissal for Failure to State a Claim Upon Which Relief Can be Granted

Defendants also maintain that Plaintiff's claim concerning his pain medication against Defendant Alston should be dismissed for failure to state a viable claim. (Doc. no. 33). Plaintiff's response did not specifically address Defendants' argument.

### 1. Applicable Legal Standard

A motion under Rule 12(b)(6) challenges the legal sufficiency of the complaint. "In essence, a movant says, 'Even if everything you allege is true, the law affords you no relief.'" Johnson v. Fleet Finance, Inc., 785 F. Supp. 1003, 1005 (S.D. Ga. 1992) (Edenfield, J.). In deciding a motion to dismiss under Rule 12(b)(6), all of the non-moving party's allegations must be presumed true and all reasonable inferences must be construed in the light most favorable to the non-moving party. Miree v. DeKalb County, Ga., 433 U.S. 25, 27 n.2 (1977); Powell v. Lennon, 914 F.2d 1459, 1463 (11th Cir. 1990). Furthermore, a claim presented by a *pro se* litigant like Plaintiff should not be dismissed if the facts alleged in the complaint are sufficient to state a claim for relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 561-62 (2007). Moreover, granting a motion to dismiss is disfavored and rare. Brooks v. Blue Cross and Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997). Finally, while factual allegations in the complaint must be taken as true when considering a motion to dismiss, there is no requirement that the Court must accept as true the plaintiff's conclusions of law. See Solis-Ramirez v. United States Dep't of Justice, 758 F.2d 1426, 1429 (11th Cir. 1985). With these principles in mind, the Court turns its attention to the motion at hand with respect to Plaintiff's claim concerning Defendant Alston's pain management.

### 2. Failure to State a Claim Against Defendant Alston

Defendants argue that Plaintiff fails to sufficiently allege an Eighth Amendment violation against Defendant Alston concerning his pain management. (Doc. no. 33). Although it is true that "[t]he Eighth Amendment's proscription of cruel and unusual punishments prohibits prison officials from exhibiting deliberate indifference to prisoners'

serious medical needs," Campbell v. Sikes, 169 F.3d 1353, 1363 (11th Cir. 1999), to support a claim for deliberate indifference to a serious medical need, Plaintiff must meet a two-prong test. First, based on an objective standard, the alleged medical problem must be "sufficiently serious"; second, the defendant must have subjectively acted with "deliberate indifference" to the inmate's health or well-being. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To state the proposition differently, Eighth Amendment liability cannot be based on simple negligence or lack of due care, but rather requires some sort of conscious disregard of a serious and imminent risk. Id. at 835-39.

To show the deliberate indifference that would violate the Eighth Amendment, Plaintiff must allege that prison officials knew about and disregarded an excessive risk to his health or safety. See id. at 837. When subjectively weighing whether prison officials are deliberately indifferent, the courts require plaintiffs to show "more than mere negligence," and look for "obduracy and wantonness, not inadvertence or error in good faith." Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995) (citation omitted); see also Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007). To state a viable Eighth Amendment claim, Plaintiff must show that the defendants acted with "deliberate indifference" to his medical needs, such as an intentional refusal to provide care, cursory care in light of a severe medical risk, or a delay in access to care that is essentially a wanton infliction of pain. Adams, 61 F.3d at 1543-44. Only when medical care is "'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness'" will the standard of "deliberate indifference" be met. Id. at 1544 (quoting Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)). Mere allegations of negligence or malpractice do not amount to deliberate indifference. Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991).

Plaintiff alleges that once he was taken back to JSP – after the removal of his rotator cuff – Defendant Alston did not give him any pain medication other than Ibuprofen for his shoulder, even though he was in severe pain. (Doc. no. 9, p. 16). Furthermore, Plaintiff asserts that he finally convinced Defendant Alston that he required pain medication, and she sent him to the pain clinic at ASMP. (Id.). While at ASMP, Plaintiff was prescribed pain medication, and then he was sent back to JSP. (Id.). Defendant Alston discontinued Plaintiff's pain medication after three weeks because she claimed it appeared as though he was abusing the pain medication. (Id.).

Notably, Plaintiff, does not complain that he did not receive pain medication as he received Ibuprofen; but rather, he complains that he should have been given a different pain medication. Thus, it appears that Plaintiff and Defendant Alston have a difference of opinion concerning the treatment for Plaintiff's pain. The Eleventh Circuit has consistently held that a mere difference in opinion between prison medical officials and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment. See Harris, 941 F.2d at 1505; Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989). That is, the burden of proving deliberate indifference cannot be met simply by arguing that an inmate wanted a different type of treatment. See Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) ("Where a prisoner has received . . . medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments. . . . Id. (citation omitted)).

Here, concerning Plaintiff's pain management, Plaintiff's complaint indicates that Defendant Alston treated his pain with Ibuprofen and sent him to the ASMP pain clinic. Plaintiff's allegation that he wanted to be treated with a different pain medication (the one

prescribed to him while he was at the pain clinic), simply reflects a difference of opinion concerning his treatment. Notably, the record shows that Defendant Alston did not refuse to provide care; she treated Plaintiff with Ibuprofen and sent him to a pain clinic. Likewise, there is nothing to show that Defendant Alston delayed providing Plaintiff access to care. Rather, Plaintiff simply submits that he wanted a different pain medication, which amounts to nothing more than a difference of opinion. Accordingly, Plaintiff has not alleged that Defendant Alston acted with deliberate indifference to his serious medical needs. Therefore, Plaintiff's claim for deliberate indifference against Defendant Alston, concerning his pain medication, should be **DISMISSED**.

## III.    CONCLUSION

Accordingly, for the reasons stated above, the Court **REPORTS** and **RECOMMENDS** that Defendants' motion to dismiss (doc. no. 33) be **GRANTED**,[5] that Plaintiff's "Motion for Court to Give or Partition a[n] Expert Witness for Trial" (doc. no. 56) be deemed **MOOT**, and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 26th day of June, 2009, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[5]In light of the above recommendation, Plaintiff's "Motion for Court to Give or Partition a[n] Expert Witness for Trial" should be deemed **MOOT**.